HARTFORD INSURANCE COMPANY of the Midwest *v.*
Melvin MULLINAX and Jim Bottin Enterprises, Inc.

98-389                                        984 S.W.2d 812

Supreme Court of Arkansas
Opinion delivered February 11, 1999

*Kilpatrick, Aud & Williams L.L.P.*, by: *Gene Williams*, for appellant.

*Boswell, Tucker & Brewster*, by: *Robert A. Ginnaven III*, for appellee Melvin Mullinax.

*Matthews, Sanders, & Sayes*, by: *Margaret M. Newton* and *Roy Gene Sanders*, for appellee Jim Bottin.

ROBERT L. BROWN, Justice. Hartford Insurance Company of the Midwest (Hartford Insurance) appeals a summary-judgment order in favor of appellees Melvin Mullinax and Jim Bottin Enterprises, Inc. (Jim Bottin), on four grounds: (1) error in granting summary judgment to Mullinax for breach of contract; (2) error in denying Hartford Insurance's motion for summary judgment against Mullinax; (3) error in granting summary judgment to Jim Bottin on Hartford Insurance's subrogation claim; and (4) error in denying Hartford Insurance's motion for summary judgment against Jim Bottin. We agree with Hartford Insurance that it was error to grant summary judgment in favor of Mullinax on the breach-of-contract claim, and we reverse and remand the judgment relating to that claim for further proceedings. We affirm the trial court in its grant of summary judgment to Jim Bottin on Hartford Insurance's subrogation claim.

On August 7, 1992, Mullinax was injured in a car accident when Cassandra White backed into his vehicle in a K–Mart parking lot in Little Rock. White was employed by Jim Bottin at the time, and Mullinax worked at ALCOA. The injuries to Mullinax's neck and back were such that his physician determined he could not return to his job. In July of 1993, White's liability carrier, Farmers Insurance Group, offered Mullinax $25,000 to settle.

On July 19, 1993, Mullinax asked his insurer, Hartford Insurance, if he should accept the $25,000. At the same time, he made demand on Hartford Insurance for the $100,000 policy limits of his underinsured motorist benefits. Hartford Insurance sent Mullinax its own check for $25,000 in substitution for the offer from Farmers Insurance. On November 19, 1993, Hartford Insurance rejected Mullinax's demand for $100,000 in underinsured motorist benefits because (1) his injuries were aggravations

of preexisting injuries, and (2) if White was in the scope of her employment at the time of the accident, Mullinax had an obligation to exhaust any other liability coverage available from her employer, Jim Bottin. On April 20, 1994, Mullinax provided some proof to Hartford Insurance that Jim Bottin did not have insurance for White covering the accident, but Hartford Insurance contended that it was inconclusive. Hartford Insurance later admitted on September 12, 1996, that Jim Bottin had no liability insurance.

On November 18, 1994, Mullinax filed suit against White and Jim Bottin. Hartford Insurance received a copy of the complaint and wrote Mullinax on December 22, 1994, that it stood ready to participate and be bound by any "verdict" against the tortfeasors in excess of their policy limits up to Mullinax's policy limits. Hartford Insurance also requested that its subrogation interest be protected if there was a settlement or judgment in favor of Mullinax within the tortfeasor's policy limits. On July 2, 1996, the trial court dismissed White from the lawsuit without prejudice upon Mullinax's motion to do so and set a trial date for his complaint against Jim Bottin. By letter dated June 27, 1996, Hartford Insurance wished Mullinax luck in his case against Jim Bottin.

On the afternoon of July 1, 1996, Mullinax notified Hartford Insurance that Jim Bottin had consented to judgment in his favor in the amount of $125,000.[1] He also told Hartford Insurance that it should call immediately if it had any questions or concerns about the consent judgment because he planned to accept the offer the next day. At the time, Hartford Insurance was unaware that, contemporaneous with the consent judgment, Mullinax had agreed not to execute on the judgment or to assign the judgment to Hartford Insurance for subrogation purposes. Mullinax and Jim Bottin also agreed that the consent judgment would be set aside if Mullinax did not receive the underinsurance coverage from Hartford Insurance. The next day, July 2, 1996, the trial court approved the consent judgment, and Mullinax demanded that

---

[1] The terms "confessed judgment" and "consent judgment" are used interchangeably in this case.

Hartford Insurance pay $100,000 in underinsurance benefits. Hartford Insurance refused.

On July 16, 1996, Mullinax filed an amended complaint against White for negligence and against Hartford Insurance for bad faith and breach of contract. He sought compensatory and punitive damages against the insurance company. As part of its responsive pleading, Hartford Insurance filed a third-party complaint against Jim Bottin, asserting its subrogation rights for the $7,280 it had paid to Mullinax in wage-loss benefits, the $25,000 it had paid in substitution for White's carrier, and any future payments. Hartford Insurance also offered $30,000 in settlement of the claim for underinsured benefits. On February 27, 1997, Mullinax voluntarily dismissed his complaint against White for a second time, which was a dismissal with prejudice under Ark. R. Civ. P. 41(a). The parties next filed cross motions for summary judgment. Mullinax only prayed for partial summary judgment on his breach-of-contract claim against Hartford Insurance. The day before trial, the trial court announced that it was ruling in favor of Mullinax and Jim Bottin and against Hartford Insurance on the summary-judgment motions. The bad-faith claim against Hartford Insurance was tried to a jury on April 24, 1997, and the jury returned a verdict in favor of the insurance company.

On January 16, 1998, the trial court (1) granted Jim Bottin's motion for summary judgment because Hartford Insurance's subrogation claim was precluded by the underinsured motorist statute (Ark. Code Ann. § 23-89-209 (Supp. 1997)), which provides for subrogation only against the "owner or operator" of an underinsured motor vehicle, (2) denied Hartford Insurance's motion for summary judgment against Mullinax because Hartford Insurance failed to intervene in the underlying lawsuit against Jim Bottin and because there was no contractual provision requiring cooperation with the insurance company, and (3) granted Mullinax's motion for summary judgment against Hartford Insurance on the contract claim based on the insurance company's failure to intervene in the underlying lawsuit and because it was bound by the consent judgment. The trial court entered judgment in favor of Mullinax for

$92,720, plus $26,973.68 in attorney's fees, and prejudgment interest of 6% annually to run from July 13, 1993.[2]

## I. Denial of Motion for Summary Judgment

Two of Hartford Insurance's points on appeal deal with alleged errors in the trial court's denial of the insurance company's motion for summary judgment. We cannot reach the merits of these two arguments because a *denial* of a summary-judgment motion is neither reviewable nor appealable. *See Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996).

## II. Breach of Contract

We turn then to the first issue appropriately before us: whether the trial court erred in granting summary judgment in favor of Mullinax on the breach-of-contract claim. We believe that error was committed. The reason stated by the trial court in granting summary judgment in favor of Mullinax was Hartford Insurance's failure to intervene in the underlying action when Jim Bottin consented to judgment in favor of Mullinax in the amount of $125,000. According to the trial court, Hartford Insurance was bound by this amount as the value of Mullinax's claim. Hartford Insurance vigorously contends that the consent judgment was a sham judgment because Mullinax agreed not to enforce the judgment or to assign it to his carrier, Hartford Insurance, for subrogation purposes. We agree with Hartford Insurance that the circumstances surrounding the consent judgment are highly questionable and smack of a subterfuge. We decline to give the consent judgment credence as a true barometer of the extent of damages incurred by Mullinax.

We turn then to the policy considerations behind underinsured motorist coverage. It is clear to us that this coverage is secondary and supplemental coverage that is activated only after

---

[2] It is unclear why the trial court set July 13, 1993, as the date for the commencement of prejudgment interest. The date of Mullinax's demand on Hartford Insurance for underinsurance benefits was July 19, 1993.

certain hurdles have been crossed. *See Shepherd v. State Auto Property & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993). In tracing the history of the underinsured motorist coverage statute from Act 335 of 1987 to Act 1180 of 1993, it is clear that in all versions of the statute, the amount of damages incurred by the insured for bodily injury and the amount of the liability insurance benefits that the insured has recovered from the tortfeasor must be known before payment by the underinsurance carrier is required. *See* Ark. Code Ann. § 23-89-209 (Supp. 1997); *see also State Farm Mut. Auto. Ins. Co. v. Thomas*, 316 Ark. 345, 871 S.W.2d 571 (1994). Our caselaw has certainly emphasized the necessity for knowing the amount of liability benefits paid. *See State Farm Mut. Auto. Ins. Co. v. Beavers*, 321 Ark. 292, 901 S.W.2d 13 (1995); *Birchfield v. Nationwide Ins.*, 317 Ark. 38, 875 S.W.2d 502 (1994); *State Farm Mut. Auto. Ins. Co. v. Thomas, supra.* We underscored in both the *Beavers* and *Thomas* decisions that the obligation to pay underinsurance benefits could not be triggered until it is determined whether the insured is in fact underinsured. That necessarily entails knowing the extent of the insured's damages and the liability benefits that have been paid by the tortfeasor's carrier. We further stated in the *Birchfield* decision that the *limits* of the liability coverage from the tortfeasors must be paid in full before the insured is entitled to underinsurance benefits.

Viewing the record before us, there appears to remain a material fact question over the amount of Mullinax's damages incurred by reason of White's negligence. Certainly, the record is clear that Mullinax made demand on Hartford Insurance for the full $100,000 in underinsurance benefits on July 19, 1993 — almost a year after the accident — and submitted proof of claim to the insurance company. It appears equally clear that Hartford Insurance disputed the claim because it questioned whether the accident merely aggravated preexisting injury. The insurance company also wanted to know the extent of Jim Bottin's liability coverage because it believed that White was acting in her capacity as an employee when the car wreck occurred. It eventually developed that White's liability coverage was $25,000 and that Jim Bottin, irrespective of the employer-employee issue, had no off-

premises liability insurance. This meant the issue of available liability insurance from the tortfeasors had been decided.

■ But the value of Mullinax's claim and the extent of his damages had yet to be determined. It seems that all parties viewed the litigation between Mullinax and Jim Bottin as the vehicle for deciding those damages. This led to the subterfuge of the consent judgment entered in favor of Mullinax and against Jim Bottin on July 2, 1996. The consent judgment was apparently agreed to for the purpose of establishing the value of Mullinax's claim and the extent of his damages. Hartford Insurance, however, had been led to believe that Mullinax's damages would be decided by a jury verdict. Thus, intervention by the insurance company to protect its interest was not considered necessary. Regardless, because the value arrived at — $125,000 — was a sham and not a true judgment amount, we consider the intervention question to be of little significance in deciding this matter. A ruse was perpetrated by Mullinax and Jim Bottin to establish damages, and we will not affirm that ruse because Hartford Insurance did not intervene. Suffice it to say that we do not believe it is mandatory for an underinsurance carrier to intervene in every lawsuit between its insured and a tortfeasor to protect against a questionable settlement or sham judgment.

■ We conclude that the breach-of-contract claim was not ripe for summary judgment in that a material fact question — the extent of Mullinax's damages — remained to be decided. Hence, the order of summary judgment must be reversed and remanded. We admit to being troubled and concerned that Mullinax was injured over six years ago and that demand was made on Hartford Insurance for payment of underinsurance benefits more than five years ago. Nevertheless, Mullinax's damages were contested by Hartford Insurance. Mullinax ultimately brought a bad-faith claim against Hartford Insurance, which was unsuccessful. The parties then were looking to the litigation between Mullinax and Jim Bottin to establish the value of his claim. That litigation, however, resulted only in a bogus judgment, which was apparently orchestrated to trigger Hartford Insurance's underinsurance coverage.

■ We reverse the trial court's order because the trial court erred in finding that Hartford Insurance was required to intervene in the negligence action against Jim Bottin or else be bound by a bogus judgment. The extent of Mullinax's damages has not yet been determined and that is a material issue of fact left unresolved. We remand for further proceedings to resolve the extent of Mullinax's damages and the issue of Hartford Insurance's liability to pay underinsurance benefits.

### III. Subrogation Against Jim Bottin

Hartford Insurance filed a third-party complaint against Jim Bottin, asserting its right to subrogation and reimbursement for underinsurance benefits paid resulting from the accident. The insurance company had paid Mullinax $7,280 in wage-loss benefits and $25,000 in substitution for insurance proceeds tendered on behalf of White. The trial court granted summary judgment in favor of Jim Bottin because it found that the underinsured motorist statute (§ 23-89-209) only provides for subrogation against the "owner or operator" of an underinsured motor vehicle.

Jim Bottin contends that Hartford Insurance's subrogation rights are limited to those contained in the underinsured motorist statute, which by its plain language defeats Hartford Insurance's subrogation rights because Jim Bottin was neither an owner nor an operator of White's car. Jim Bottin also argues that the claim is barred by the statute of limitations and that the dismissal with prejudice granted in favor of White likewise releases Jim Bottin from any liability imputed to it.

■ ■ Because of the plain language of § 23-89-209, the question then becomes whether Hartford Insurance has common-law subrogation rights to go against Jim Bottin by virtue of its insurance policy with Mullinax or whether this statute displaces them. Although the General Assembly has the power to alter the common law, *see White v. City of Newport*, 326 Ark. 667, 933 S.W.2d 800 (1996), a legislative act will not be construed as overruling a principle of common law "unless it is made plain by the act that such a change in the established law is intended." *White v. State*, 290 Ark. 130, 136, 717 S.W.2d 784, 787 (1986) (quoting

*Starkey Constr., Inc. v. Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (1970)). Moreover, we strictly construe statutes in derogation of the common law. *See Holt Bonding Co. v. State*, 328 Ark. 178, 942 S.W.2d 834 (1997). Here, the statute is not so explicit in its language that all subrogation rights under the insurance policy are voided, or that the vicarious liability of employers is removed. The trial court erred in its decision that the statute voided all common-law rights.

Nevertheless, we hold that the trial court correctly granted summary judgment to Jim Bottin, albeit for the wrong reason. *See Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998). On February 17, 1997, White was voluntarily dismissed from the litigation pursuant to a motion by Mullinax. This was a second dismissal, and it operated as an adjudication on the merits. *See* Ark. R. Civ. P. 41(a). Imputed or vicarious liability is tied to the negligence of the employee. When the employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer likewise is eliminated. *See Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984); *Davis v. Perryman*, 225 Ark. 963, 286 S.W.2d 844 (1956). *See also* 27 AM. JUR. 2d, *Employment Relationship*, §§ 469-70 (1996). Because Hartford Insurance stands in the shoes of Mullinax, its claim is no greater than that of its insured. *See Union Nat'l Bank of Little Rock v. Hooper*, 295 Ark. 83, 746 S.W.2d 550 (1988); *Page v. Scott*, 263 Ark. 684, 567 S.W.2d 101 (1978). We conclude that any potential subrogation claim against Jim Bottin by Hartford Insurance ended when White was dismissed from the litigation with prejudice. We affirm the trial court on this point, but for a different reason.

Because we reverse and remand on the breach-of-contract claim, we need not address the issue of penalty, attorney's fees, and prejudgment interest.

Affirmed in part. Reversed in part and remanded.