375 Ark. 523

Charles **ARCHER** and Linda Archer, Husband and Wife, Individually and as Parents and Next Friends of Mason Archer, Appellants,

v.

**SISTERS OF MERCY HEALTH SYSTEM, ST. LOUIS, INC. d/b/a Sisters of Mercy Health System d/b/a St. Joseph's Mercy Health Center; Bethany A. McGraham, M.D.; James E. Tutton, M.D.; Hot Springs Radiology Services, Ltd.; Mark S. Russell, M.D.; Mark B. Robbins, M.D.; Deanna L. Shatwell, R.N. a/k/a Deanna L. Dial, R.N.; and Paula Scheck, R.N., Appellees.**

No. 08–784.

Supreme Court of Arkansas.

Feb. 12, 2009.

Arnold, Batson, Turner & Turner, P.A., by: Todd Turner and Dan Turner, Arka-

delphia, and Wigington Rumley, LLP, by: Joe Dunn, for appellants.

Wright, Lindsey & Jennings LLP, by: Edwin L. Lowther, Jr., David P. Glover, Little Rock, and Gary D. Marts, Jr., Little Rock, for appellee Sisters of Mercy Health System, St. Louis Pooled Comprehensive Liability Program, et al.

Brian Brooks, Greenbrier, for amicus curiae Arkansas Trial Lawyers Association.

ROBERT L. BROWN, Justice.

This appeal involves a medical malpractice action brought by appellants Charles and Linda Archer ("the Archers") on behalf of their son, Mason Archer, against multiple parties, including appellee, Sisters of Mercy Health System, St. Louis Pooled Comprehensive Liability Program ("the Liability Pool").[1] The circuit judge entered an order dismissing the Liability Pool. We reverse and remand.

The following facts are gleaned from the Archers' pleadings and pretrial motions. On March 12, 2005, the Archer family was in an automobile accident while returning to their home in Arkadelphia, after a trip to Hot Springs. The driver of the other vehicle involved in the accident, who was intoxicated at the time, died in the accident. The Archers sustained serious injuries. The injuries suffered by Mason Archer ("Mason"), who was six years old at the time of the accident, are the subject of the instant lawsuit.

When emergency personnel arrived at the crash scene, they discovered that Mason had suffered a fractured wrist. He also had visible facial injuries. Mason was moving all four extremities at the scene, but the ambulance crew placed him on a spinal board and in a cervical collar until doctors could determine whether he had suffered any spinal cord injuries. The ambulance took Mason to the emergency room at St. Joseph's Mercy Health Center ("St. Joseph's").

The Archers allege that St. Joseph's and the doctors who treated Mason acted negligently in providing medical care, with the result that Mason is permanently paralyzed from the chest down. Their complaint asserts that when Mason arrived at the emergency room, he complained to a nurse of abdominal pain and pain in his arms and legs, that he was then examined by Dr. Bethany McGraham and subsequently by Dr. James Tutton, and that Mason was eventually transferred to Arkansas Children's Hospital where it was determined that he had serious spinal-cord injuries.

The essence of the Archers' negligence claim is as follows: Dr. Tutton ordered a CT scan of Mason's head, neck, abdomen, and pelvis at St. Joseph's, which was not read by a doctor for almost four hours. When the results were eventually interpreted, they were incorrectly determined to be negative. After the test results came back, a nurse removed the cervical collar from Mason and allowed him to move around.[2] The collar was removed before Mason was examined by a physician, and a nurse "pulled on Mason's arm" in an attempt to help him stand up, resulting in permanent paralysis.

██ On March 9, 2007, the Archers filed suit against various parties.[3] They did not

---

1. The Archers added the Liability Pool as a named defendant in their First Amended Complaint.

2. St. Joseph's has denied that the cervical collar was removed.

3. The Archers initially named Sisters of Mercy Health System, St. Joseph's Mercy Health Center, Bethany A. McGraham, M.D., James E. Tutton, M.D., Hot Springs Radiology Services, Ltd., Mark S. Russell, M.D., Mark B.

name the Liability Pool[4] then because two months before the Archers filed their original complaint, this court handed down a decision specifically holding that the Liability Pool was not an insurer for purposes of the direct-action statute, codified at Arkansas Code Annotated section 23–79–210. *See Sowders v. St. Joseph's Mercy Health Ctr.*, 368 Ark. 466, 475, 247 S.W.3d 514, 521 (2007). Later, in response to the decision in *Sowders*, the Arkansas General Assembly amended the direct-action statute to expressly state that "[a]ny self-insurance fund, pooled liability fund, or similar fund maintained by a medical care provider for the payment or indemnification of the medical care provider's liability for medical injuries under § 16–114–201 et seq. shall be deemed to be liability insurance susceptible to direct action under this section." Act of Mar. 30, 2007, No. 750, 2007 Ark. Acts 3963 (hereinafter "Act 750").

On August 27, 2007, after the enactment of Act 750, the Archers amended their original complaint to name the Liability Pool as a defendant to the instant action. On November 9, 2007, the Liability Pool moved to dismiss the amended complaint on the basis that Act 750 could not be applied retroactively because it had created a new cause of action against the Liability Pool. On March 11, 2008, the circuit judge held a hearing on the motion, and on April 25, 2008, she handed down a letter ruling in which she explained her decision to grant the Liability Pool's motion. The judge specifically found that:

> Robbins, M.D., Deanna L. Shatwell, R.N., and Paula Scheck, R.N.

**4.** St. Joseph's is a member of the Liability Pool, which is a pooled-liability fund administered and maintained by Sisters of Mercy Health System.

[T]he amendment to the direct-action statute changed a fund which was previously not insurance to insurance. This is a substantive change for *the Program* [Liability Pool] to be prepared to pay potential claims it had not previously been required to pay. It created a new right to sue which tort victims did not have prior to the law. It enlarged the responsibility of *the Program* [Liability Pool] to include the accumulation of funds adequate to pay potential new claims. All of the Arkansas cases on this subject indicate prospective application only for such substantive changes.

On May 8, 2008, the circuit judge entered an order dismissing the Liability Pool and a certificate of final judgment, pursuant to Arkansas Rule of Civil Procedure 54(b).

The Archers contend on appeal that Act 750, which permits direct-action lawsuits against pooled-liability funds and deems such funds to be liability insurance for such lawsuits, is remedial in nature and, as such, should be applied retroactively so as to effectuate the intent of the legislation.[5]

We first consider the Liability Pool's claim that this court should not consider the Archers' arguments that the direct-action statute should be construed liberally, that retroactive application is necessary to effectuate its intended purpose, and that rules of statutory construction require that Act 750 be retroactively applied. The Liability Pool initially asserts that the Archers did not raise these issues before the circuit judge. It, however, is wrong on this point. The record clearly indicates

**5.** The direct-action statute, Arkansas Code Annotated section 23–79–210, which Act 750 amended, reads that "[w]hen liability insurance is carried by any cooperative non-profit corporation, association, or organization ... not subject to suit in tort ... the person so injured or damaged shall have a direct cause of action against the insurer." Ark.Code Ann. § 23–79–201 (Supp.2007).

that the Archers raised these issues during the March 11, 2008 hearing. Further, these points are not separate issues on appeal. Rather, if the court determines that Act 750 is remedial, they necessarily become part of the court's analysis in determining whether to apply the act retroactively.

This court has consistently set forth the law regarding retroactive application of statutes. *See, e.g., McMickle v. Griffin,* 369 Ark. 318, 254 S.W.3d 729 (2007). We have said:

> Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only support a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.

*McMickle,* 369 Ark. at 338–39, 254 S.W.3d at 746 (citing *Bean v. Office of Child Support Enforcement,* 340 Ark. 286, 296–97, 9 S.W.3d 520, 526 (2000)). The general rules also apply to amendatory acts. *See Gannett River States Publ'g Co. v. Ark. Ind. Dev. Comm'n,* 303 Ark. 684, 799 S.W.2d 543 (1990).

This court has also observed that:

> Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or remedy. Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedures, are not within the general rule against retroactive operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retroactive application, and remedial legislation may, without violating constitutional guarantees, be construed ... to apply to suits on causes of action which arose prior to the effective date of the statute.... A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective....

*JurisDictionUSA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 412, 183 S.W.3d 560, 565–66 (2004) (citing *Padgett v. Bank of Eureka Springs,* 279 Ark. 367, 651 S.W.2d 460 (1983)).

We turn then to the central question of whether Act 750, amending Arkansas Code Annotated section 23–79–210, is remedial in nature. In *Rogers v. Tudor Insurance Co.,* we said, "[d]irect action statutes are remedial in nature and are liberally construed for the benefit of injured parties and to effectuate the intended purposes." 325 Ark. 226, 234, 925 S.W.2d 395, 399 (1996) (citing 12A *Couch on Insurance 2d* §§ 45:798, 45:800, at 455, 458 (1981)). Despite this statement of the law, the Liability Pool maintains that the *Rogers* language is dicta and that this court should decline to hold that Arkansas's direct-action statute is remedial. In support of its position, the Liability Pool directs this court to additional language from *Couch on Insurance,* which indicates that some jurisdictions treat direct-action statutes as creating a substantive right in the claimant to sue the insurance company. *See* 7A Lee R. Russ & Thomas Segalla, *Couch on*

*Insurance 3d* § 104:54, at 104–82 (1999).[6] According to the Liability Pool, this court should "consider the text [*Couch* ] in its entirety" because "the view of direct action statutes being procedural in nature is not universally applied."

We disagree with the Liability Pool's analysis. This court should rely on the quoted language from *Rogers* that direct-action statutes are remedial in nature as precedent. The *Rogers* court studied *Couch on Insurance* and cited as authority language from *Couch* that direct-action statutes are remedial in nature, even though the treatise also included the reasoning that some jurisdictions use to hold that direct-action statutes create substantive rights. The clear message from *Rogers* is that this court was persuaded by the view that the statute is remedial in nature.

The Liability Pool goes on and claims that Act 750 cannot be remedial because it affords the Archers a new legal right and imposes a new obligation on it. In essence, it argues that when the negligence cause of action arose, the Archers did not have a right to sue the Liability Pool, and it was not obligated to pay damages on the claim. Accordingly, it asserts that Act 750 operates to give plaintiffs a new cause of action against pooled-liability funds and, therefore, cannot be remedial in nature. We disagree.

Act 750 did not create a new cause of action. The negligence cause of action that is the heart of the Archers' claim is grounded in this state's common law and is regulated by statute. *See* Ark.Code Ann. §§ 16–114–201 to –212 (Repl.2006 & Supp. 2007) (Actions for Medical Injury). The statutes govern "any action against a medical care provider, whether based in tort, contract, or otherwise, to recover damages on account of medical injury." *Id.* § 16–

114–201 (Repl.2006). The application of the charitable immunity doctrine, however, operates to prevent some injured parties from recovering damages for negligence against charitable hospitals directly. *See Low v. Ins. Co. of N. Am.,* 364 Ark. 427, 440, 220 S.W.3d 670, 680 (2005) (certain charitable entities are immune from tort liability).

The direct-action statute, codified at section 23–79–210, is a statutory remedy because it provides a new or substitute remedy for the underlying claim of negligence in cases where the plaintiff cannot recover directly from a negligent charitable hospital. *See JurisDictionUSA, Inc.,* 357 Ark. at 412, 183 S.W.3d at 566 (a statute providing a new or substitute remedy can be applied retroactively). After this court's decision in *Sowders,* parties injured as the result of negligence on the part of charitable hospitals, who did not carry traditional liability insurance but did contribute to a pooled-liability fund, were left without a remedy for the hospital's negligence. 368 Ark. 466, 247 S.W.3d 514. As already noted, the General Assembly responded with Act 750 by amending the direct-action statute so that it now expressly states that pooled-liability funds are liability insurers under the statute. Contrary to the Liability Pool's contention, this amendment did not create a new legal right for injured parties. Instead, it clarified that those injured parties have a remedy against a liability pool for the underlying claim of negligence when charitable immunity of a hospital is involved.

Despite this, the Liability Pool relies heavily on this court's often-cited language that a remedial statute cannot "impose a new obligation." *See McMickle,* 369 Ark. at 339, 254 S.W.3d at 746. Its position is

---

**6.** The section cited by the Liability Pool primarily addresses choice of law issues pertaining to direct-action statutes, which are not relevant to the current analysis.

that Act 750 imposed a new obligation by requiring it to pay damages to the Archers in the event a jury finds that St. Joseph's was negligent in providing medical care to Mason. The Liability Pool relies on this court's decision in *Estate of Wood v. Arkansas Department of Human Services* to support its argument. 319 Ark. 697, 894 S.W.2d 573 (1995). We do not agree that the *Estate of Wood* case militates in favor of the Liability Pool's position.

At issue in *Estate of Wood* was an act that permitted the Arkansas Department of Human Services (DHS) to make a claim against a decedent's estate for medicaid payments made to the decedent prior to death. *Id.* at 698, 894 S.W.2d at 574. This court refused to apply that act retroactively because it "appear[ed] to create a new legal right which allow[ed] DHS to file a claim against the estate of the deceased." *Id.* at 701, 894 S.W.2d at 575. The court went on to note that "[p]rior to the enactment [of the act, the decedent] had no reason to consider the medicaid payments as anything other than an outright entitlement. After the enactment it was as if she had a loan from DHS to be repaid from the assets of her estate." *Id.* at 701, 894 S.W.2d at 576.

The Liability Pool contends that, like in *Estate of Wood,* "the remedy that Appellants assert is a new legal right" and it "is now burdened with the new obligation to plaintiffs bringing such suits." The Liability Pool, though, misapplies the *Estate of Wood* decision to the instant matter. In that case, DHS had no right to recover medicaid payments from a decedent's estate prior to the enactment of the act. In this case, the Archers already had the right to sue in negligence and recover from a liability insurer, under the direct-action statute, prior to the enactment of Act 750. Act 750 merely clarified an avenue of relief for the Archers to pursue

under that statute. The Liability Pool also advocates that the "obligation" imposed on the decedent in *Estate of Wood,* to repay DHS the money she received in benefits during her life, is analogous to its "new obligation" to pay damages to the plaintiffs under the direct-action statute. However, the proper interpretation of *Estate of Wood* is that the legislative act in that case interfered with the decedent's vested right to receive benefits as an "outright entitlement." *Id.* at 701, 894 S.W.2d at 576. In the instant case, Act 750 does not disturb any of the Liability Pool's vested rights.

Furthermore, the Liability Pool's argument that Act 750 cannot be remedial because it imposes an obligation on it to pay damages is unpersuasive because this court has held that statutes and court rules are remedial in certain cases and can be applied retroactively even if the result is that a party may have to pay damages it otherwise would not have previously had to pay. *See, e.g., Steward v. Statler,* 371 Ark. 351, 266 S.W.3d 710 (2007) (estate permitted to proceed with a wrongful death claim even though it failed to comply with the procedural requirements of the statute at the time the suit was filed; court applied an amendment retroactively); *McMickle,* 369 Ark. 318, 254 S.W.3d 729 (plaintiff permitted to seek loss-of-life damages against a defendant even though the statute was amended to allow for such damages after the suit was filed; court applied the changes to the statute retroactively); *JurisDictionUSA, Inc.,* 357 Ark. 403, 183 S.W.3d 560 (applied an amendment to Ark. R. Civ. P. 55(f) retroactively and reversed a default judgment under the previous version of the rule; allowed the plaintiff to proceed with the claim).

We are further influenced in our decision by the fact that the Liability Pool is a self-insurance program administered and maintained by the Sisters of Mercy Health

System, which does business in many states, but in Hot Springs as St. Joseph's. Hence, the Liability Pool is not a separate, unrelated, and distinguishable third party. It is a fund that clearly is under the umbrella of the same non-profit corporation that runs St. Joseph's. It also receives contributions from Sisters of Mercy hospitals throughout a multi-state region, including St. Joseph's, to cover medical malpractice claims. In some of those states, Sisters of Mercy hospitals are not protected by charitable immunity, as St. Joseph's is in Arkansas, which means the Liability Pool pays malpractice claims against those hospitals. It is difficult under these facts to accept the proposition that the Liability Pool qualifies as a new party, brought into this matter and burdened with a new obligation imposed by virtue of Act 750.

█ Because we hold that Act 750 is remedial in nature, this court must then apply the cardinal principle for construing remedial legislation and examine what is "the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed." *McMickle*, 369 Ark. at 339, 254 S.W.3d at 746. Act 750 was clearly enacted to reverse this court's decision in *Sowders* and to permit parties to recover directly from pooled-liability funds like the Liability Pool. Act 750 operates to provide injured parties with a remedy when there otherwise would have been none. Again, this court has said that "direct-action statutes are remedial in nature and are *liberally construed for the benefit of injured parties.*" *Rogers*, 325 Ark. at 234, 925 S.W.2d at 399 (emphasis added). Using these principles of the law, we apply Act 750 retroactively, and we reverse the circuit judge's order, which dismissed the Liability Pool as a defendant in the instant action.

Reversed and remanded.