**Jane M. HENRY, as Personal Representative of the Estate of Ernest L. Henry, Deceased, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, as the liability insurance carrier for Washington Regional Medical Center; Jon Berry, M.D., F.A.C.S.; Anthony R. Burton, M.D., F.A.C.S.; Jeffrey Bell, M.D., F.A.C.S.; Fayette-**ville Surgical Associates, P.A.; Kyle G. Hardy, M.D., F.C.C.P.; Michael A. Eckles, M.D.; Fayetteville Diagnostic Clinic, Ltd.; Mana Medical Associates d/b/a a/k/a Medical Associates of Northwest Arkansas (Mana), Appellees.

No. 10–1255.

Supreme Court of Arkansas.

May 19, 2011.

Rehearing Denied July 27, 2011.

Keith, Miller, Butler, Schneider & Pawlik, PLLC, Rogers, by: Sean T. Keith; and Watson & Dameron, LLP, by: Russell Dameron, for appellant.

Davis, Clark, Butt, Carithers & Taylor, PLLC, by: Constance G. Clark, Kelly Carithers, and Colin M. Johnson, Fayetteville, for appellees.

KAREN R. BAKER, Justice.

This appeal from the circuit court's dismissal of a medical-malpractice action involves whether vicarious-liability princi-

ples are applicable to a negligence action against the insurer of a hospital that enjoys charitable immunity under the direct-action statute, Ark.Code Ann. § 23–79–210 (Repl.2009). Appellant Jane M. Henry, as the personal representative of the estate of her deceased husband, Ernest L. Henry, brought an action in the Washington County Circuit Court against multiple parties, including Continental Casualty Company |₂("Continental"), Washington Regional Medical Center ("Washington Regional"), Irma De La Cruz, R.N., and Amber Hefner, R.N. (sometimes referred to collectively herein as "Defendants"). Among other things, the complaint broadly asserted that Washington Regional was vicariously liable for the conduct of its employees, including nurses De La Cruz and Hefner. Appellant moved to voluntarily dismiss Washington Regional, De La Cruz, and Hefner, stating that she was proceeding only against the hospital's insurer, Continental, under the direct-action statute. Defendants also moved to dismiss, asserting that appellant failed to obtain service of process on De La Cruz and Hefner and that the statute of limitations had expired with respect to any claims against the nurses. The circuit court granted Defendants' motion to dismiss the claims against De La Cruz and Hefner with prejudice, finding that appellant acknowledged that she failed to obtain service on the nurses prior to the expiration of the statute of limitations. Additionally, the circuit court found that because Washington Regional's alleged negligence arose from its vicarious liability based on the actions of the dismissed nurses, all claims against Washington Regional and Continental must likewise be dismissed with prejudice. The circuit court certified the judgment pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure. After the circuit court denied appellant's motion

to reconsider, appellant timely filed a notice of appeal. We reverse and remand.

The underlying facts in this case are not in dispute. Ernest Henry suffered severe injuries in an automobile accident that occurred on October 29, 2007, in Eureka Springs, Arkansas. Mr. Henry was transported to Washington Regional where he was treated for his injuries and subsequent complications until his death on November 11, 2007. Appellant, as |₃the court-appointed personal representative and surviving spouse of Mr. Henry, filed a medical-malpractice suit on October 9, 2009, against Defendants, as well as the five treating physicians and three independent medical clinics with which the physicians were associated.

On November 17, 2009, an answer was filed on behalf of Defendants. In their answer, Defendants admitted certain critical issues: (1) De La Cruz and Hefner were at all times relevant to this action employed by Washington Regional and were acting within the course and scope of their employment; (2) Washington Regional is a nonprofit corporation organized under the laws of the State of Arkansas, and enjoys charitable immunity; and (3) Continental was the primary liability carrier for Washington Regional at all relevant times. In their original answer, Defendants stated as follows:

> [T]o the extent that Arkansas vicarious liability law is applicable to the facts of this case, these separate Defendants admit that any proved negligent actions of Washington Regional's agents or employees, occurring within the scope of their employment and which are proved to be the proximate cause of Plaintiff's alleged injuries or damages, may be imputed to Continental, as the liability insurance carrier providing coverage for Washington Regional at the time of the events alleged in Plaintiff's Complaint

and First Amended Complaint, pursuant to the direct action statute, Ark.Code Ann. § 23–79–210.

The answer preserved the nurses' defenses under Rule 12(b) of the Arkansas Rules of Civil Procedure, including insufficiency of process and insufficiency of service of process. On May 19, 2010, Defendants moved to dismiss the complaint. Defendants alleged that because the nurses were not served within 120 days of filing the complaint,[1] the claims against the nurses must be dismissed under Ark. R. Civ. P. 4(i), and that the dismissal must be with prejudice because the two-year statute of limitations for medical-negligence actions set forth at Ark.Code Ann. § 16–114–203 had expired.

On June 3, 2010, appellant responded to the motion to dismiss by simultaneously filing a motion to dismiss her claims against Washington Regional and the nurses without prejudice and a second amended complaint. Appellant stated in her motion to dismiss that based on Defendants' admissions that Washington Regional was immune and that the direct-action statute applied, Washington Regional and the nurses were not proper parties to the action. Appellant moved to dismiss these parties and proceed solely against Continental under the direct-action statute.

On June 16, 2010, Defendants filed an answer to the second amended complaint and a motion to dismiss. Defendants denied that Continental could be held liable for the alleged negligence of Washington Regional's employees, including the alleged negligence of De La Cruz and Hefner, and asserted that appellant's failure to timely serve the nurses, or any other allegedly negligent agent or employee of Washington Regional, extinguished any vicari-ous-liability claims against Continental. In its motion to dismiss, Defendants argued that under principles of vicarious liability, once an employee has been released or dismissed, the employer's liability is likewise extinguished, and that because Continental stands in the shoes of the employer, no cause of action can be maintained against it.

After a July 13, 2010 hearing on both motions to dismiss, the circuit court entered an order on July 22, 2010, granting Defendants' motion to dismiss with prejudice. The circuit court specifically found (1) that service of process against De La Cruz and Hefner was not obtained and the statute of limitations had expired with respect to appellant's claims against the nurses, requiring the court to dismiss the complaint with prejudice as to these nurses, and (2) that "[u]nder Arkansas law, an employer's vicarious liability arises directly from the alleged negligence of the employee, and where the allegedly negligent employee has been released or dismissed, any vicarious liability that could be imputed to the employer is likewise eliminated," requiring the court to dismiss appellant's claims against Washington Regional and Continental.

In reviewing a court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Downing v. Lawrence Hall Nursing Ctr.*, 2010 Ark. 175, 369 S.W.3d 8. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id.* However, when a complaint is dismissed on a question of

---

1. Appellant filed the initial complaint on October 9, 2009. The 120–day period in which to serve the named parties expired on February 6, 2010. Appellant conceded that she failed to serve the nurses.

law, this court conducts a de novo review. *Id.*

In addition, the circuit court's grant of Defendants' motion to dismiss was based on its interpretation of the relationship between the direct-action statute and common-law negligence principles of vicarious liability. We review issues of statutory construction de novo. *Couch v. Farmers Ins. Co.*, 375 Ark. 255, 289 S.W.3d 909 (2008). It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *Id.* The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the General Assembly. *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* In ascertaining legislative intent, we look to the statutory language, subject matter, object to be accomplished, purpose to be served, remedy provided, legislative history, and other appropriate matters. *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996).

We must first examine the direct-action statute, codified at Ark.Code Ann. § 23–79–210, which states as follows:

(a)(1) When liability insurance is carried by any cooperative nonprofit corporation, association, or organization, . . . or by any other organization or association of any kind or character and not subject to suit for tort, and if any person, firm, or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of the organization, association, municipality, or subdivision, its servants, agents, or employees acting within the scope of their employment or agency, then the person, firm, or corporation so injured or damaged shall have a direct cause of action against the insurer with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy.

. . . .

(3) The insurer shall be directly liable to the injured person, firm, or corporation for damages to the extent of the coverage in the liability insurance policy, and the plaintiff may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

Ark.Code Ann. § 23–79–210(a). In *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), we opined that where a charitable organization is immune from an action in tort, its liability insurance carrier is subject to a direct action under Ark.Code Ann. § 23–79–210.[2] We have rejected the notion that a new cause of action has been created through our direct-action statute. *See Archer v. Sisters of Mercy Health Sys.*, 375 Ark. 523, 294 S.W.3d 414 (2009). In *Archer*, the court observed that the direct-action statute is remedial in nature and refused to adopt the view that direct-action statutes create substantive rights. *Id.* (citing *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); and 12A *Couch on Insurance 2d* §§ 45:798, 45:800, at 455, 458

2. This court set forth the history of the direct-action statute and charitable immunity in detail in *Neal v. Sparks Regional Medical Center*, 375 Ark. 46, 289 S.W.3d 8 (2008).

(1981)). In rejecting the insurer's argument that the direct-action statute operated to create a new cause of action for injured plaintiffs, this court observed that the negligence cause of action at issue "is grounded in this state's common law and is regulated by statute." *Id.* at 529, 294 S.W.3d at 418 (citing Ark.Code Ann. §§ 16–114–201 to –212 (Repl.2006 & Supp. 2007) (governing causes of action for medical injury)). We noted that the charitable-immunity doctrine prevents recovery for some injured parties for negligence against charitable organizations directly. *Id.; see* Ark.Code Ann. § 16–114–201. The direct-action statute, however, "provides a new or substitute remedy for the underlying claim of negligence in cases where the plaintiff cannot recover directly from a negligent charitable hospital." *Archer,* 375 Ark. at 530, 294 S.W.3d at 418. In concluding that Act 750[3] was remedial in nature, the court stated that it "must then apply the cardinal principle for construing remedial legislation and examine what is 'the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.' " *Id.* at 532, 294 S.W.3d at 420 (quoting *McMickle v. Griffin,* 369 Ark. 318, 338, 254 S.W.3d 729, 746 (2007)).

We have noted that injured parties can bring an action directly against the immune charitable organization's insurance carrier under the direct-action statute, as well as against individual employees of the charitable organization who are not immune to suit. *Sowders v. St. Joseph's Mercy Health Ctr.,* 368 Ark. 466, 247 S.W.3d 514 (2007) (citing *Low, supra;* and *Helton v. Sisters of Mercy,* 234 Ark. 76, 351 S.W.2d 129 (1961)).[4] In *Helton,* this court concluded that while a charitable hospital was immune from the suit, the allegedly negligent employees were not immune from suit and the direct-action statute provided a cause of action directly against the insurer. *Helton,* 234 Ark. at 84, 351 S.W.2d at 133. The court did not state that these remedies were in any way tied to or otherwise dependent upon one another.

■ Appellees argue that the direct-action statute does not act to overrule common-law principles of vicarious liability. They assert that this court should apply the rationale expressed in *Hartford Ins. Co. v. Mullinax,* 336 Ark. 335, 984 S.W.2d 812 (1999). *Mullinax* is distinguishable from the instant case on several points. Notably, *Mullinax* did not involve the application of our remedial direct-action statute, but involved the underinsured motorist coverage statute.[5] *Id.* There, the court strictly construed the statute at issue because it was in derogation of the common law. *Id.* Here, we will not strictly construe the statute before us because the direct-action statute is not in derogation of the common law. Instead, it affords a remedy that would not be available because of our generous charitable-immunity doctrine, and we liberally con-

3. The portion of the direct-action statute at issue in *Archer* was the amendment of the act to include liability of pooled liability funds, amongst others, under the statute pursuant to Act of Mar. 30, 2007, No. 750, 2007 Ark. Acts 3963 ("Act 750").

4. The decision in *Sowders* was superseded by statutory amendment when the Legislature enacted Act 750 to include liability pools as insurers within the direct-action statute.

5. The underinsured motorist statute, Ark. Code Ann. § 23–89–209, at issue in *Mullinax* is fundamentally different from the direct-action statute before us. In particular, the statute in *Mullinax* did not provide for a direct action against an insurer. That case involved whether common law subrogation rights against the tortfeasor's employer, against whom the statute conferred no direct action, survived the insured's voluntary dismissal of the tortfeasor.

strue application of the direct-action statute for the benefit of the injured parties.[6] *See Archer,* 375 Ark. at 532, 294 S.W.3d at 420. Also, *Mullinax* did not involve a suit against an immune charitable organization, which is a critical difference. This court's decision in *Thomas v. Sessions,* 307 Ark. 203, 818 S.W.2d 940 (1991), supports this conclusion. In *Thomas,* this court observed that although physicians may subject a business corporation to liability under the doctrine of respondeat superior, this doctrine has not been extended to charitable organizations. *Id.* at 211, 818 S.W.2d at 944; *see also Kenning v. St. Paul Fire & Marine Ins. Co.,* 990 F.Supp. 1104 (W.D.Ark.1997).

Because direct-action statutes are remedial in nature, we liberally construe them for the benefit of the injured parties and to effectuate the intended purposes. *Rogers,* 325 Ark. at 234, 925 S.W.2d at 399 (citing 12A *Couch on Insurance 2d* §§ 45:798, 45:800, at 455, 458 (1981)). Looking at the plain language of the statute, it is clear that the legislature sought to provide a plaintiff a right to directly pursue an insurer in situations where the injury is caused by the negligence of a nonprofit organization or its employees who are acting within the scope of their employment.

Broadly construing the statute, it does not impose a new requirement that employees or agents of the immune, charitable organization must be joined.[7] To the contrary, we have determined that the statute does not even require the joinder of the immune, charitable organization. *See Sowders,* 368 Ark. at 475–76, 247 S.W.3d at 521; *cf. George v. Jefferson Hosp. Ass'n,* 337 Ark. 206, 987 S.W.2d 710 (1999) (noting that the plaintiff could have sued both the charitable organization and its liability-insurance carrier through alternative pleading without jeopardizing its claim against either defendant). Accepting appellees' argument that vicarious-liability principles must apply would defeat the legislature's purpose in enacting the direct-action statute and judicially create a new requirement in pleading under the statute. Further, creating a new requirement that where an injured plaintiff alternatively pleads against an insurance carrier under the direct-action statute as well as against agents or employees of immune, charitable organizations under the theory of vicarious liability, the failure to continue suit against the agents or employees when the plaintiff elects to proceed only against the admittedly responsible insurance carrier is fatal, places the injured plaintiff in exactly the type of legal "catch–22" position that we eschewed in *George,* 337 Ark. at 216, 987 S.W.2d at 715.

---

6. In her dissent, Justice Henry cites us to no authority for the proposition that "the holding in *Mullinax* applies here with even greater force because the direct-action statute itself incorporates the very principles of vicarious liability." In fact, there are no Arkansas cases applying this theory. This court has never required an injured plaintiff to join tortfeasors as parties to plead under vicarious-liability principles in a suit against an immune-charitable organization under our direct-action statute.

7. Justice Danielson admits in his dissent that "there was no requirement that the nurses be joined." He reasons that once the nurses were joined, even though joinder was unnecessary, their dismissal extinguished any claim against their immune employer. Arkansas law has never supported this theory, which clearly penalizes an injured plaintiff for alternatively pleading, even where such pleading may protect the injured party from unforeseen changes in the law. Also, we have drawn a distinction, which this dissent refuses to acknowledge, between business and charitable corporations in applying principles of vicarious liability. *See Thomas, supra.*

We hold that under our direct-action statute, Continental, as Washington Regional's liability-insurance carrier, is subject to a direct cause of action, and nothing in the direct-action statute requires the joinder of the allegedly negligent employees. Accordingly, we reverse the circuit court's order dismissing appellant's complaint with prejudice and remand for further proceedings.

Reversed and remanded.

CORBIN, DANIELSON, and HENRY, JJ., dissent.

PAUL E. DANIELSON, Justice, dissenting.

Because the circuit court in no way erred when it followed this court's precedent in dismissing the complaint with prejudice, I would affirm and therefore respectfully dissent. The majority's reversal in this case demonstrates a complete disregard for this court's longstanding adherence to one of the basic principles of vicarious liability, as set forth in *Hartford Insurance Co. v. Mullinax*, 336 Ark. 335, 984 S.W.2d 812 (1999), specifically, that "[w]hen the employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer likewise is eliminated." 336 Ark. at 344, 984 S.W.2d at 816–17 (citing *Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984); *Davis v. Perryman*, 225 Ark. 963, 286 S.W.2d 844 (1956); 27 Am.Jur.2d. *Employment Relationship*, §§ 469–70 (1996) (currently § 387 (2011))).

The majority attempts to distinguish the instant case on the basis that it involved a direct action pursuant to Arkansas Code Annotated § 23–79–210 (Supp.2009); however, no distinction can be had. This court has made it exceedingly clear that the direct-action statute is merely a remedy that permits allegations of injury by a charitable organization, not subject to an action in tort, to be made in a suit against the charity's liability insurer. *See Neal v. Sparks Reg'l Med. Ctr.*, 375 Ark. 46, 289 S.W.3d 8 (2008). It is remedial, or procedural in nature, and does not create a substantive right in a claimant to sue the insurance company. *See Archer v. Sisters of Mercy Health Sys.*, 375 Ark. 523, 294 S.W.3d 414 (2009).

Here, the Estate's substantive right to sue Washington Regional is based on the doctrine of respondeat superior, under which an employer can be held vicariously liable for the tortious conduct of an employee or agent if the evidence shows that the conduct was committed within the employee's scope of employment. *See Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006). While Washington Regional is not subject to an action in tort due to its charitable status, its liability insurance carrier is subject to such a suit and is subject to the legal principles of vicarious liability. Merely because the suit is permitted directly against the insurer rather than the employer itself is of absolutely no moment.

The Estate elected to bring suit against the nurses and their employer, who was immune from suit; therefore, the Estate was permitted to bring suit against the hospital's insurance carrier. The Estate, however, also elected to dismiss the nurses, resulting in a dismissal with prejudice. Indeed, there was no requirement that the nurses be joined; but where they were and were released or dismissed, the principles of vicarious liability result in the extinguishment of any claim against their employer, charitable or not. The majority's attempt to evade this principle solely on the basis that the action is one under the direct-action statute is simply illogical.

CORBIN and HENRY, JJ., join.

COURTNEY HUDSON HENRY, Justice, dissenting.

Appellant appeals the circuit court's order dismissing with prejudice a medical-malpractice action brought against Continental Casualty Company (Continental) pursuant to the direct-action statute found at Arkansas Code Annotated section 23–79–210 (Supp.2009). In reversing the circuit court's order of dismissal and remanding for further proceedings, the majority opinion appears to abolish our well-established, common-law principles of vicarious liability when an aggrieved party files a negligence action against a tort-immune hospital and, more importantly, its employees. I disagree with the majority's holding and respectfully dissent.

The issue in this case is whether the circuit court correctly applied the principles of vicarious liability in appellant's negligence action whereby, pursuant to the direct-action statute, appellant named Continental as a defendant as the insurer of Washington Regional Medical Center (WRMC), which is immune from suit. Appellant alleged that WRMC, and thus Continental, was vicariously liable for the conduct of two nurses, Irma De La Cruz and Amber Hefner, who were also named as defendants in the lawsuit. Continental moved to dismiss, alleging that appellant failed to obtain service of process on the two nurses and that the statute of limitations expired with respect to any claims against them. Further, based upon principles of vicarious liability, Continental contended that the required dismissal of the nurses with prejudice worked to absolve Continental of any liability.

The circuit court granted Continental's motion to dismiss, agreeing with Continental's arguments. The circuit court ruled that, because of the nurses' dismissal, any vicarious liability could not be imputed to Continental. In its decision, the circuit court relied upon a vicarious-liability theory articulated by this court in *Hartford Insurance Company of the Midwest v. Mullinax*, 336 Ark. 335, 984 S.W.2d 812 (1999). In *Mullinax*, we stated,

White was voluntarily dismissed from the litigation pursuant to a motion by Mullinax. This was a second dismissal, and it operated as an adjudication on the merits. *See* Ark. R. Civ. P. 41(a). Imputed or vicarious liability is tied to the negligence of the employee. When the employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer likewise is eliminated. *See Barnett v. Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984); *Davis v. Perryman*, 225 Ark. 963, 286 S.W.2d 844 (1956). *See also* 27 Am.Jur.2d, *Employment Relationship* §§ 469–70 (1996). Because Hartford Insurance stands in the shoes of Mullinax, its claim is no greater than that of its insured. *See Union Nat'l Bank of Little Rock v. Hooper*, 295 Ark. 83, 746 S.W.2d 550 (1988); *Page v. Scott*, 263 Ark. 684, 567 S.W.2d 101 (1978).

*Mullinax*, 336 Ark. at 344, 984 S.W.2d at 816–17. In *Mullinax*, we concluded that any potential subrogation claim against Jim Bottin, an appellee, by Hartford Insurance, appellant, ended when appellee's employee was dismissed from the litigation with prejudice.

In my opinion, the circuit court properly dismissed appellant's complaint based upon the vicarious-liability principles articulated in *Mullinax*. The majority attempts to distinguish *Mullinax*, without overruling it, by claiming that it did not involve "the application of our remedial direct-action statute." However, the fact that the direct-action statute was not at issue in *Mullinax* is a distinction without a difference. The holding in *Mullinax* rests

entirely upon principles of vicarious liability, and those principles are fully applicable here. Contrary to the majority's contention, the holding in *Mullinax* applies here with even greater force because the direct-action statute itself incorporates the very principles of vicarious liability. As in *Mullinax, supra,* the circuit court's dismissal of the nurses served as an adjudication on the merits. *See* Ark. R. Civ. P. 41(a); *Orr v. Hudson,* 2010 Ark. 484, 374 S.W.3d 686. Thus, any of the nurses' liability was imputed to WRMC, and, because of their dismissal, Continental's liability was likewise eliminated because Continental stands in the shoes of WRMC.

Further, we have held that a legislative act (i.e., the direct-action statute) will not be construed as overruling a principle of common law (i.e., vicarious liability) "unless it is made plain by the act that such a change in the established law is intended." *Mullinax,* 336 Ark. at 343, 984 S.W.2d at 816. We strictly construe statutes in derogation of the common law. *Id.* In my view, we should not eviscerate our common-law principles of vicarious liability; rather, we should read them harmoniously with the direct-action statute. To reverse this case would be in derogation of our well-established, common-law principles of vicarious liability and would eliminate any available defenses to future insurer-defendants.

CORBIN and DANIELSON, JJ., join.