Cite as 2016 Ark. App. 475

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** E-16-35

| | |
|---|---|
| FAMILIES, INC.<br><br>APPELLANT<br><br>V.<br><br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES EMPLOYER CONTRIBUTION UNIT<br><br><br>APPELLEE | **Opinion Delivered:** October 19, 2016<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2015–BR–7EC]<br><br><br><br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Families, Inc. ("Families") appeals from the Arkansas Board of Review's ("Board") decision finding that it is required to pay unemployment-insurance taxes for the services performed by some of its workers. On appeal, Families argues that the Board erred by not applying the recently amended version of Arkansas Code Annotated section 11-10-210. Families also asserts that the Board's decision is not supported by substantial evidence. We affirm.

### I. *Facts*

On February 11, 2015, the Arkansas Department of Workforce Services ("Department") issued an unemployment-tax determination letter of liability to Families concluding that Families' workers were its employees for purposes of unemployment-insurance taxes. On March 2, 2015, Families filed a letter disputing the Department findings and requested a hearing for a redetermination of coverage by the Department director

SLIP OPINION

("Director") pursuant to Arkansas Code Annotated section 11-10-308 (Supp. 2013). In April 2015, the statute concerning the criteria used to classify workers as either independent contractors or as employees was amended. Pursuant to the amendment, in order for an employer to show that its workers are independent contractors, Arkansas Code Annotated 11-10-210(e) now requires that the employer prove the first prong of the three-prong test and only one of the other two prongs. Prior to the amendment, the statute required that the employer satisfy all three prongs of the test.

The hearing was held on June 11, 2015. At the hearing several Families workers testified about the services they performed for Families and about the work they engaged in outside of Families. Each of these four witnesses testified that he or she provided mental-healthcare-related services for Families and that they also worked as professionals in the mental healthcare field outside of Families. One witness, Anne Lehman, testified that she was employed as a school counselor at McRae Elementary School and that she maintained a private practice in addition to her work with Families. Stephanie Marlowe testified that she was employed as a mental-health therapist with Families and that she maintained a private practice. Keith Merriweather testified that he worked for the Veterans Administration as a veterans services representative, and that he was a contract case manager for Families. These workers testified that Families assigned clients to them but that they were allowed to control the size of their caseloads.

Mark Thurman, the CEO for Families testified that the "Rehabilitative Services for Persons with Mental Illness" ("RSPMI") manual set forth the same regulations for both employees and contract workers and that, for purposes of the RSPMI, there was no

distinction between the two classifications of workers. Thurman testified that the RSPMI set forth rules for accreditation, record keeping, performance evaluations, staff competence and training, and location of services. Thurman testified that, pursuant to the "Professional Services Agreement," Families workers must get approval of any outside work they take on.

After the hearing, the Director issued a decision affirming the tax audit letter on liability and found that Families used both traditional employees and contract workers to deliver the outpatient services it provided and that it issued the client assignments to both types of workers; thus, Families was responsible for the payment of unemployment-insurance taxes for the services performed by its mental-health professionals and paraprofessionals classified as employees, and their earnings constituted wages subject to unemployment taxes. Families then appealed to the Board, which affirmed and adopted the Director's decision in an opinion filed on August 13, 2015. Families has now timely appealed the Board's decision to this court.

## II. *Points On Appeal*

### A. Retroactive Application of Arkansas Code Annotated Section 11-10-210

The first point on appeal asserted by Families is whether the amended version of Arkansas Code Annotated section 11-10-210 should have been applied retroactively. Families argues that the amended statute should have been applied because the change made by the legislature was procedural rather than substantive; thus, the amendment did not create any new rights or obligations. Furthermore, Families argues that the changes relate to the fiscal affairs of government and the collection of taxes; therefore, retroactive application of a statute is permissible. We disagree, and we affirm.

SLIP OPINION

The first principle of retroactivity of legislation is that retroactivity is a matter of legislative intent. *Coots v. Bandera*, 2016 Ark. App. 388, at 2–3, ___ S.W.3d ___. The general rule is that all legislation is presumed to apply prospectively unless the legislature expressly declares, or necessarily implies by the language used, an intent to give a statute retroactive effect. *Id.* The rule of strict construction does not apply to remedial statutes that do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. *Bean v. Office of Child Support Enf't*, 340 Ark. 286, 297, 9 S.W.3d 520, 526 (2000). Procedural legislation is more often given retroactive application. *Id.* The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. *Ark. Dep't of Human Servs. v. Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993). In addition, we have approved retroactive application of civil statutes, especially those concerning the fiscal affairs of government. For example, our supreme court held that the State can retroactively impose taxes. *DuLaney v. Cont'l Life Ins. Co.*, 185 Ark. 517, 47 S.W.2d 1082 (1932). The United States Supreme Court has also said taxes can be retroactively applied. *Reinecke v. Smith*, 289 U.S. 172 (1933).

The original decision in this case was entered February 11, 2015. The change in Arkansas Code Annotated section 11-10-210 (amended on April 2, 2015) relates to the criteria used to determine the classification of certain workers as either employees or as independent contractors. According to the version of the statute in place at the time of the original determination of the Director, to classify a worker as an independent contractor and thus exempting the employer from paying unemployment-insurance taxes, the

employer must demonstrate that all of the prongs of the three-prong test are met. By contrast, the amended statute requires that the first prong and only one of either the second or third prongs be satisfied. The amendment relaxes the standard for proving that workers are independent contractors and significantly alters the criteria used to determine whether a worker is an employee or an independent contractor. This is a substantive change. We hold that because the amended statute does not expressly set forth that it should be applied retroactively, and because the change enacted is substantive and not procedural, the unamended version of Arkansas Code Annotated section 11-10-210(e) was correctly applied.

Families also argues that because the revision in the statute relates to the collection of taxes, it is subject to retroactive application. This argument was not raised below to the Board at the June 11, 2015 review hearing, and the Board made no findings concerning this issue for us to review. This court does not consider issues raised for the first time on appeal. *Perdrix-Wang v. Dir., Emp't Sec. Dep't*, 42 Ark. App. 218, 223, 856 S.W.2d 636, 639 (1993); thus, we decline to reach this issue.

### B. Whether Families Workers Are Free From Control and Direction

Families argues that there was no evidence presented to support the Board's finding that its workers are subject to the control and direction of Families. Families asserts that it requires that its contractors comply with the law and that the evidence of control and direction noted by the auditor are actually Medicaid requirements set forth by the RSPMI manual and that those requirements are imposed by the Department of Human Services.

SLIP OPINION

On appeal, the findings of the Board are affirmed if they are supported by substantial evidence. *Jori Enters., LLC v. Dir., Dep't of Workforce Servs.*, 2015 Ark. App. 634, at 4–5, 474 S.W.3d 910, 912–13. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences therefrom in the light most favorable to the Board's findings. *Id.* Even where there is evidence upon which the Board might have reached a different conclusion, appellate review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.* Also, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Johnson v. Dir.*, 84 Ark. App. 349, 141 S.W.3d 1 (2004).

Pursuant to Arkansas Code Annotated section 11–10–210(e)

Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:

(1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;

(2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and

(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

Under this version of the statute, in order for an employer to establish the exemption set forth in section 11–10–210(e), it must prove each of the three requirements in subsections

SLIP OPINION

(1)–(3). *Jori Enters, LLC, supra.* If there is sufficient evidence to support the finding of the Board that any one of the three requirements for establishing the exemption is not met, the case must be affirmed. *Id.* In this case, the Director found that Families failed to satisfy any of the three prongs of the statutory test. The Board affirmed and adopted the Director's decision.

As noted above, the failure to satisfy even one subsection of the statute requires us to affirm the Board's decision. Arkansas Code Annotated section 11–10–210(e)(1) requires that the employer establish a worker "has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact[.]" The Board made the following findings with regard to this subsection. Families controls the assignments offered to its workers, it provides initial and continuing training to its workers, and it monitors workers' performance and competency. Workers are required to enter a HIPPA contract as a condition of working for Families. These agreements set forth the workers' rate of pay, specific job duties, and specific, required record-keeping practices. Workers are required to comply with Families policies, procedures, rules, regulations, guidelines and protocols, and Families can change the agreement at any time. Workers are not allowed to engage in outside work without the approval of Families' chief executive officer. Families also reserves the right to discharge a worker.

The Board's conclusion that Families exercised direction and control is supported by the findings. The requirements imposed by the State in connection with Medicaid evidence significant control over Families workers. These Families policies relating to Medicaid

requirements concern record keeping, training, and the mandatory use of software and encrypted email accounts provided by Families. Families argues that state Medicaid requirements, and not any internal policy, are the source of direction and control of its workers in those instances; however, it is clear that Families assumes the ultimate responsibility for ensuring compliance with Medicaid requirements. Furthermore, Families has the responsibility of firing a worker who does not meet the specifications required by Medicaid, which is an indication of control; thus, the Board's finding that Families did not prove this factor is supported by substantial evidence.

The Board also made findings concerning Families' direction and control that are unrelated to Medicaid requirements. The Board found that workers are not allowed to take any outside work without the approval of Families' chief executive director. Also, the Board refers to the policies set forth by Families in the required agreement—policies such as attending required training, following the dress code and code of conduct, and requiring workers to attend regular staff meetings. In light of these findings, we affirm the Board's decision that Families exercises control and direction over its workers.

Families asserts that this court should reject the application of the "control" prong as it did in *O'Dell v. Director*, 2014 Ark. App. 504, 442 S.W.3d 897. We hold that *O'Dell* is distinguishable from the present case. In *O'Dell*, this court held

> The sole evidence of control before the Board was that O'Dell gave instructions to her typists regarding the format, font, and margins, and she required them to return the completed work within 24–36 hours. Once the work was returned, O'Dell would review it and make any revisions before forwarding the product to St. Vincent. If any of the typists failed to adequately complete the work, O'Dell retained termination rights and did not pay them. . . . Providing an independent contractor with basic guidelines and retaining the right to discontinue using them in the future

does not equate to control sufficient to create an employer-employee relationship under the statute.

*Id.* at 3, 442 S.W.3d at 899.

*O'Dell* is distinguishable in that in the present case there is more meaningful evidence of Families' control and direction over its employees, which we set forth above in detail.

Thus, we hold that there is substantial evidence to support the Board's finding that Families failed to satisfy the requirement in Arkansas Code Annotated section 11-10-210(e)(1). It is therefore unnecessary to address the remaining statutory requirements, as Families failed to meet its burden to show that it is exempt from paying unemployment insurance taxes on its workers. Accordingly, we affirm the Board's decision.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Branch, Thompson, Warmath & Dale, P.A.*, by: Robert F. Thompson III, for appellant.

*Phyllis A. Edwards*, for appellee.