Cite as 2021 Ark. App. 314

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-20-404

|  |  |
|---|---|
| | **Opinion Delivered** September 1, 2021 |
| TERRY CAUFFIEL, AS ADMINISTRATOR OF THE ESTATE OF CAROLYN SUE CAUFFIEL, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF CAROLYN SUE CAUFFIEL | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-13-355] |
| APPELLANT | HONORABLE GARY ARNOLD, JUDGE |
| V. | |
| PROGRESSIVE ELDERCARE SERVICES- SALINE, INC., D/B/A HEARTLAND REHABILITATION AND CARE CENTER; SOUTHERN ADMINISTRATIVE SERVICES, LLC; AND CAREPLUS STAFFING SERVICES, LLC | REVERSED AND REMANDED |
| APPELLEES | |

## LARRY D. VAUGHT, Judge

Terry Cauffiel, acting as administrator of the estate of his mother, Carolyn Sue Cauffiel,

appeals the Saline County Circuit Court's order granting Progressive Eldercare Services-Saline,

Inc., d/b/a Heartland Rehabilitation and Care Center ("Heartland") a directed verdict on

Cauffiel's resident's-rights claim under the Arkansas Protection of Long-Term Care Facility

Residents Act ("Resident's Rights Act"), 1999 Ark. Acts 1181, as amended (currently codified

at Ark. Code Ann. §§ 20-10-1201 to –1209 (Repl. 2018 & Supp. 2019). We reverse and remand.

Carolyn Cauffiel was a resident of Heartland from February 29 to July 22, 2012. On the morning of July 22, Ms. Cauffiel was rushed to the hospital in extreme respiratory distress and passed away a few days later. Terry Cauffiel was named administrator of her estate and filed suit against Heartland alleging negligence, medical malpractice, and violations of Ms. Cauffiel's statutory rights as a resident of a long-term-care facility. He also included several other claims that were dismissed prior to trial and are not a part of this appeal.

Mr. Cauffiel tried these claims to a jury in May 2018. He presented expert testimony from a nurse and a physician that breaches of the professional standard of care caused Ms. Cauffiel to suffer medical injuries and death. Mr. Cauffiel also testified and presented the testimony of other lay witnesses describing the terrible conditions in the nursing home and illustrated how Ms. Cauffiel and other residents were routinely ignored, mocked, left to sit in their own filth and waste, and suffered insults to their basic humanity and dignity.

At the close of the plaintiff's case, Heartland requested a directed verdict on the resident's-rights claim, arguing that the legislature eliminated the independent cause of action via a subsequent amendment to the Resident's-Rights Act and that the claim was duplicative of the negligence/medical-malpractice claim. The motion was denied but was renewed after the close of Heartland's case, and after several rounds of arguments on the motion, the circuit court directed a verdict on the resident's-rights claim because it said the jury would not be able to distinguish between damages attributable to medical malpractice and damages attributable to violations of the Resident's Rights Act.

The remaining medical-malpractice claim was submitted to the jury, which found that Heartland had breached the standard of care. The jury awarded $30,812.15 for Ms. Cauffiel's pain and suffering. Mr. Cauffiel now appeals the circuit court's decision to direct a verdict in favor of Heartland on the resident's-rights claim.

A circuit court properly grants a directed verdict when the party bearing the burden of proof fails to introduce sufficient evidence to put the cause of action to the jury. *Farm Credit Midsouth PCA v. Bollinger*, 2018 Ark. App. 224, at 6, 548 S.W.3d 164, 170–71. "In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it." *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). "A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict." *Id.* "[I]f *any* substantial evidence exists that tends to establish an issue in favor of [the opposing] party, then a jury question is presented, and the directed verdict should be reversed." *Rose Care, Inc. v. Ross*, 91 Ark. App. 187, 210, 209 S.W.3d 393, 407 (2005) (emphasis in original). Likewise, "[w]here the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented." *Id.* at 200, 209 S.W.3d at 400. A circuit court may also properly grant a directed verdict when the court resolves a legal issue entitling the moving party to judgment as a matter of law on a particular claim. *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 464, 986 S.W.2d 836, 840 (1999).

3

The Resident's Rights Act codified certain rights for Arkansans living in nursing homes. Relevant to this appeal, the Resident's Rights Act guarantees individuals living in nursing homes (1) the right to be free from mental and physical abuse; and (2) the right to be treated courteously, fairly, and with the fullest measure of dignity. Ark. Code Ann. § 20-10-1204 (a)(14), (21) (Repl. 2018). At the time Cauffiel's claims accrued in 2012 and when the lawsuit was filed in 2013, the Resident's Rights Act allowed for any resident injured by a deprivation of the rights listed above to "bring a cause of action against any licensee responsible for the deprivation or infringement." Ark. Code Ann. § 20-10-1209(a) (Repl. 2005). In 2013, the Resident's Rights Act was amended by Act 1196 to completely eliminate this claim. In its current form, nursing-home residents may no longer recover for violations of the Resident's Rights Act. Instead, they have only one cause of action "under § 16-114-201 et seq.," the Medical Malpractice Act. Ark. Code Ann. § 20-10-1209(a)(1) (Repl. 2018). The current version makes it clear that a deprivation or infringement of a resident's rights now "does not itself create an additional cause of action." *Id.* § 20-10-1209(d)(1). Rather than a standalone claim with damages that do not depend on a showing of medical negligence, violations of the Resident's Rights Act are now only considered "evidence of negligence" as part of a medical-malpractice claim. *Id.* § 20-10-1209(d)(2).

At trial, the circuit court granted a directed verdict on Cauffiel's resident's-rights claim because it ruled that allowing the plaintiffs to proceed on both the negligence claim and the resident's-rights claim would likely confuse the jury and lead to an impermissible double

4

recovery.[1] On appeal, Cauffiel argues that the court erred in granting a directed verdict against his resident's-rights claim because the Arkansas Supreme Court has repeatedly recognized that such a claim is separate and distinct from a negligence or medical-malpractice claim. Heartland counters that (1) even if separate and distinct claims, it would be impermissible to allow for double recovery for the same injury, and (2) the 2013 amendment to the Resident's Rights Act should be applied retroactively to bar Cauffiel's cause of action.

The court ruled that Cauffiel could not present both the resident's-rights claim and the negligence claim to the jury because doing so would confuse the jury and likely lead to a double recovery. On appeal, Cauffiel argues that these two claims have long been recognized as separate and distinct causes of action. Cauffiel relies heavily on *Koch v. Northport Health Services of Arkansas, LLC*, 361 Ark. 192, 202, 205 S.W.3d 754, 762 (2005). In *Koch*, the jury decided in favor of the defense on a nursing-home resident's medical-malpractice claim, resident's-rights claim, and wrongful-death claim. The jury was unable to reach a verdict on the plaintiff's ordinary-negligence claim, and the circuit court entered a verdict in favor of the defense on the ordinary-negligence claim. The Arkansas Supreme Court reversed the court's refusal to grant a mistrial on the ordinary-negligence claim, holding that the jury's verdict for the defense on the resident's-rights claim was not dispositive as to the ordinary-negligence claim, because the "[resident's rights] claim is a statutory claim separate from the common-law claim of

---

[1] While Heartland argues that the "confuse the jury" and "double recovery" rationales were two separate and independent grounds for granting the directed verdict, the court treated these concerns as one issue. Specifically, the court worried that the jury would be confused and would not be able to intelligently separate the two claims, which would lead to duplicative damages covering the same injury.

ordinary negligence, the jury was entitled to reach conflicting results in relation to those claims." *Koch*, 361 Ark. at 202, 205 S.W.3d at 762. Similarly, in *Smith v. Heather Manor Care Center, Inc.*, the Arkansas Supreme Court reversed a directed verdict entered against a nursing-home patient's resident's-right claim, explaining:

> Although the Arkansas Supreme Court has not expressly considered whether a resident's rights claim is subsumed into a medical-malpractice claim, it has referred to a resident's rights claim as a statutory claim that is separate and distinct from any negligence claim. *Koch v. Northport Health Servs. of Ark., LLC*, 361 Ark. 192, 202, 205 S.W.3d 754, 762 (2005). We cannot say that the administrators' resident's rights claim was subsumed into the medical-malpractice claim. Therefore, the circuit court could not properly grant a directed verdict on that basis in favor of Heather Manor. However, a directed verdict in favor of Heather Manor would be proper if the administrators failed to submit sufficient evidence to support their claim.

2012 Ark. App. 584, at 5–6, 424 S.W.3d 368, 373–74.

Heartland argues that, even if they are separate and distinct claims, the court was right to direct a verdict on the resident's-rights claim because sending both claims to the jury would lead to an impermissible double recovery. Heartland's argument is a nuanced one: it contends that when the plaintiff pursues alternative causes of action (which it concedes a plaintiff may do), if the damages alleged under both causes of action are the same (i.e., measuring the same injury or loss), the circuit court should allow only one of the causes of action to proceed to the jury in order to prevent the plaintiff from recovering twice for the same damages. Heartland relies on *Regions Bank v. Griffin*, in which the Arkansas Supreme Court explained:

> Under the doctrine of election of remedies, a plaintiff may proceed to trial on multiple theories of recovery for the same injury and may pursue multiple remedies up until the time that the jury is instructed, at which time it must be made clear that the jury is required to choose one or the other. *Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 934 S.W.2d 485 (1996); *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993). The doctrine applies to remedies, not to causes of action, and bars more than

6

one recovery on inconsistent remedies. *Wilson v. Fullerton*, 332 Ark. 111, 964 S.W.2d 208 (1998); *Smith*, 314 Ark. 591, 864 S.W.2d 817. Thus, even though the theories of recovery may not be inconsistent, such as those in contract and tort, recoveries on both theories are not allowed. *Smith*, 314 Ark. 591, 864 S.W.2d 817; *Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989). In short, a plaintiff may pursue different theories of recovery; however, recovery on more than one theory for the same injury is not permitted. *Id.* "Such a double recovery would be unconscionable." *Id.* at 498, 763 S.W.2d at 654.

364 Ark. 193, 196, 217 S.W.3d 829, 832 (2005). Heartland argues that because each of Cauffiel's claims requires proximate causation and actual damages, they amount to competing theories of recovery or election of remedies, and therefore, "whether the recovery stems from the Medical Malpractice Act or the Resident's Rights Act for the alleged damages, the recovery remains the same," and as a result, the court's grant of a directed verdict did not prejudice Cauffiel because he recovered the full measure of damages available to him. This reasoning contradicts the supreme court's holdings in both *Koch* and *Smith*. Under Heartland's theory, the resident's-rights claim is essentially duplicative of a negligence/medical-malpractice claim, both of which operate simply as competing theories of recovery for the same damages or injury. The supreme court's reversals in *Koch* and *Smith*, however, make clear that the supreme court views the claims as separate and independent causes of action, allowing for separate recoveries under each claim.

In their arguments regarding whether the resident's-rights claim and the medical-malpractice claim would provide double recovery for the same damages, the parties disagree on whether the Resident's Rights Act allows for recovery of "loss of dignity" as a separate element of damages. If the statute allows for such damages, the two claims clearly compensate the injured party in differing ways. Heartland argues that the law does not provide for "loss of

7

dignity" damages but cites no authority for that point other than the current version of Arkansas Code Annotated section 20-10-1209(a)(4), which states that

> [t]he resident may seek to recover actual damages when there is a finding that an employee of the long-term care facility failed to do something which a reasonably careful person would do or did something which a reasonable person would not do under circumstances similar to those shown by the evidence in the case, which caused an injury due to an infringement or a deprivation of the resident's rights.

Heartland's interpretation of that language hinges on a significant change created by the 2013 amendment. Heartland states that "[t]he plaintiff may recover the actual damages from a loss of dignity, but it is not an element of damage in and of itself under the statute." Heartland's argument echoes specific statutory language added in 2013:

> A deprivation or infringement of rights under this subchapter does not itself create an additional cause of action . . . . However, a deprivation or infringement of rights under this subchapter may be used as evidence of negligence.

Ark. Code Ann. § 20-10-1209(d)(1)–(2) (Repl. 2018). Therefore, Heartland's contention that "loss of dignity" damages are unavailable in a resident's-rights case hinges on whether the 2013 amendment to the Resident's Rights Act should be applied retroactively.

The retroactive application of the 2013 amendment is also the basis for Heartland's broader claim that we should affirm the circuit court's directed verdict based on "right result, wrong reason" because the 2013 amendment completely eliminated any separate cause of action for violations of the Resident's Rights Act. This argument is discussed at length and rejected below. Because we hold that the 2013 amendment to the Resident's Rights Act cannot be applied retroactively, Heartland cannot rely on the amendment as its basis for arguing that "loss of dignity" damages are unavailable in a resident's-rights case. As *Koch* and *Smith* have

8

already made clear, a resident's-rights claim and a negligence claim are separate and distinct causes of action that compensate the plaintiff for different injuries, and allowing both claims to proceed would not have resulted in a double recovery.

Heartland next argues that, even if the circuit court erred in granting the directed verdict to avoid jury confusion and double recovery, we should affirm because the circuit court reached the right result for the wrong reason. Specifically, Heartland argues that the circuit court's decision is also supported by the retroactive application of the 2013 amendment, which eliminates the private cause of action for violation of the Resident's Rights Act and requires such suits to be brought as medical-malpractice claims. Cauffiel first argues that we cannot affirm on that basis because the circuit court never ruled on the retroactivity of the 2013 amendment, so any analysis of it on our part would constitute an impermissible advisory opinion. Cauffiel notes that "[w]hile this court can affirm a circuit court's ruling if it is correct for any reason, even if the reasoning relied upon by the circuit was incorrect, this court cannot make up and address a ruling that the circuit court never made." *Conley v. Boll Weevil Pawn Co., Inc.*, 2019 Ark. 31, at 10, 566 S.W.3d 125, 131 (internal citations omitted). On this issue, Cauffiel is mistaken. The court made a ruling—it granted the motion for directed verdict. The question presented by Heartland's arguments is whether that ruling was correct even if the court relied on incorrect reasoning to reach it. "Right result, wrong reason" often requires an appellate court to address an argument or rationale on which the circuit court never ruled. Otherwise, it would simply be called an alternative basis for the ruling.

9

Cauffiel contends that the 2013 amendment cannot be applied retroactively, and on this point we agree. "It is presumed that all legislation is intended to apply prospectively only." *Estate of Wood v. Ark. Dep't of Human Servs.*, 319 Ark. 697, 700, 894 S.W.2d 573, 575 (1995). If the legislature intends for a statute to apply retroactively, it must be "stated or implied so clearly and unequivocally as to eliminate any doubt." *Bean v. Office of Child Support Enf't*, 340 Ark. 286, 296, 9 S.W.3d 520, 526 (2000). "Any doubt is resolved against retroactivity and in favor of prospectivity only." *Gannett River States Publ'g Co. v. Ark. Indus. Dev. Comm'n*, 303 Ark. 684, 687, 799 S.W.2d 543, 545 (1990) (quoting *Ark. Rural Med. Prac. Student Loan & Scholarship Bd. v. Luter*, 292 Ark. 259, 729 S.W.2d 402 (1987)). In addition, the rules against retroactive application "apply especially with reference to amendatory acts." *Id.* at 688, 799 S.W.3d at 546.

The 2013 amendment to the Resident's Rights Act is silent on whether it may be applied retroactively. *See* 2013 Ark. Acts 1196 (An Act to Subsume Various Causes of Action for Health Care Injuries Against a Medical Care Provider Under a Single Remedy; and for Other Purposes). Despite the fact that such a law would normally be applied prospectively, Heartland argues that the amendment should still be applied retroactively because it is remedial in nature. Remedial legislation may be construed to apply to suits on causes of action that arose prior to the effective date of the statute. *Bean*, 340 Ark. at 297, 9 S.W.3d at 526. A statute is remedial if it merely supplies "a new or more appropriate remedy to enforce an existing right or obligation." *Id.*

Cauffiel argues that the 2013 amendment cannot be deemed remedial because the supreme court has held that remedial statutes do not extinguish old or existing rights but

10

merely supply new, different, or more appropriate remedies for those rights. *Gannett River*, 303 Ark. at 689, 799 S.W.2d at 546. Cauffiel contends that the 2013 amendment to the Resident's Rights Act did not provide a "new, different, or more appropriate remedy" for violations of the Act but instead completely extinguished a previously existing cause of action for violation of the Act.

Prior to the 2013 amendment, the Arkansas Supreme Court repeatedly held that the Resident's Rights Act created a separate and independent cause of action that was not subsumed within a medical-malpractice claim. *See Koch*, *supra; Smith*, *supra.* Moreover, a resident's-rights claim brought before the 2013 amendment did not require the plaintiff to demonstrate a violation of the applicable professional standard of care, *see Bedell v. Williams*, 2012 Ark. 75, at 12–15, 386 S.W.3d 493, 502–504 (holding that it was an error to allow a medical expert to opine on the meaning of dignity as used in the Resident's Rights Act), and it at least arguably allowed for recovery for loss of dignity as a separate element of damages. These two causes of action had distinct elements.

The 2013 amendment changed that. It mandated that plaintiffs alleging a violation of the Resident's Rights Act have only one cause of action "under § 16-114-201 et seq."—the Medical Malpractice Act. Ark. Code Ann. § 20-10-1209(a)(1). The current version makes it clear that a deprivation or infringement of a resident's rights now "does not itself create an additional cause of action." *Id.* § 20-10-1209(d)(1). Resident's-rights violations are now only considered "evidence of negligence" as part of a medical-malpractice claim. *Id.* § 20-10-1209(d)(2).

Cauffiel argues that we cannot apply the 2013 amendment retroactively because doing so would extinguish a statutory right that had already accrued. "Rights conferred by statute are determined according to statutes which were in force when the rights accrued and are not affected by subsequent legislation." *Gillioz v. Kincannon*, 213 Ark. 1010, 1018, 214 S.W.2d 212, 216 (1948) (quoting *Coco v. Miller*, 193 Ark. 199, 104 S.W.2d 209 (1937)). Furthermore, "[t]he Legislature has no power to divest legal or equitable rights previously vested." *Id.* "In this context a vested right exists when the law declares that one has a claim against another. . . ." *Forrest City Mach. Works, Inc. v. Aderhold*, 273 Ark. 33, 41, 616 S.W.2d 720, 724 (1981).

As an example, Cauffiel cites *Families, Inc. v. Director*, in which the retroactive application of a new law regarding the classification of workers as employees or independent contractors was at issue. 2016 Ark. App. 475, 505 S.W.3d 217. In *Families, Inc.*, this court affirmed the circuit court's application of the preamendment test for determining whether a worker was an employee or an independent contractor explaining that the amendment would not be retroactively applied because the legislature's alteration of the test for classifying workers was a "substantive change," not a remedial or procedural fix. *Id.* at 4–5, 505 S.W.3d at 220. Cauffiel correctly notes that the 2013 amendment to the Resident's Rights Act not only acts as a substantive change (by subsuming a resident's-rights claim within the framework for medical-malpractice claims, the amendment changes the elements and types of damages at issue), it also eliminates a cause of action that previously existed. *Bean*, 340 Ark. at 299, 9 S.W.3d at 528 (holding that a statute could not be applied retroactively because, at the time the putative father signed the acknowledgement of paternity, it would have only been considered "persuasive,

presumptive evidence of paternity" rather than operating as a matter of law to conclusively establish paternity).

"The strict rule of construction [prohibiting retroactive application of new legislation] does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation." *Bean*, 340 Ark. at 297, 9 S.W.3d at 526 (citing *Harrison v. Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962)). The 2013 amendment to the Resident's Rights Act cannot, therefore, be viewed as merely remedial in nature. Were we to apply it to Cauffiel's claim, it would clearly "disturb vested rights" and "create new obligations," meaning that it is a substantive change, not a remedial one. The Arkansas General Assembly could have included language in the 2013 amendment stating that it should be applied retroactively. The legislature chose not to include such language, and because the change is more than merely remedial or procedural, this court may not choose to apply it retroactively when the legislature has not set that policy.

We therefore reverse the circuit court's directed verdict on Cauffiel's resident's-rights claim and remand this case for further proceedings in keeping with our opinion. Specifically, the circuit court should apply the statute as it operated prior to the 2013 amendment.

Reversed and remanded.

VIRDEN and BARRETT, JJ., agree.

*Reddick Moss, PLLC*, by: *Matthew D. Swindle*, *Heather G. Zachary*, and *Robert W. Francis*, for appellant.

*Kutak Rock LLP*, by: *Mark W. Dossett* and *Samantha Blassingame*, for appellees.