Cite as 2026 Ark. App. 245

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-25-257

| | |
|---|---|
| SEASIDE POOLS, INC.<br>APPELLANT<br><br>V.<br><br>ROBERT LEE CURTIS, JR., AND<br>SHEILA DAWN CURTIS<br>APPELLEES | Opinion Delivered April 22, 2026<br><br>APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. 04CV-22-2183]<br><br>HONORABLE CHRISTINE<br>HORWART, JUDGE<br><br>REVERSED AND REMANDED |

**BART F. VIRDEN, Judge**

Appellant Seaside Pools, Inc., entered into a contract with appellees Robert Lee Curtis, Jr., and Sheila Dawn Curtis for installation of a swimming pool. When the Curtises failed to pay in full, Seaside filed a lawsuit against the Curtises, initially seeking a lien and then breach of contract. The Benton County Circuit Court granted summary judgment to the Curtises, in part, because Seaside failed to provide the Curtises with a lien notice pursuant to Ark. Code Ann. § 18-44-115(a)(4) (Supp. 2017). Seaside argues that (1) it is not a "residential contractor" required to provide the lien notice; (2) Act 984 of 2021 should be applied retroactively; and (3) Act 808 of 2017 violates the Arkansas Constitution. Because we agree that Act 984 of 2021 should be applied retroactively, we reverse and remand.

I. *Arkansas Code Annotated section 18-44-115*

Arkansas Code Annotated section 18-44-115(a) ("the 2017 version") provides in relevant part the following:

(1) No lien upon residential real estate containing four (4) or fewer units may be acquired by virtue of this subchapter unless the owner of the residential real estate, the owner's authorized agent, or the owner's registered agent has received, by personal delivery or by certified mail, a copy of the notice set out in this subsection.

. . . .

(3) It shall be the duty of the residential contractor to give the owner, the owner's authorized agent, or the owner's registered agent the notice set out in this subsection on behalf of all potential lien claimants before the commencement of work.

(4) If a residential contractor fails to give the notice required under this subsection, then the residential contractor *is barred from bringing an action either at law or in equity, including without limitation quantum meruit, to enforce any provision of a residential contract.*

. . . .

(8)(A) . . . [I]f the transaction is a direct sale to the property owner, the notice requirement of this subsection shall not apply, and the lien rights arising under this subchapter shall not be conditioned on the delivery and execution of the notice.

(B) A sale shall be a direct sale only if:

(i) The property owner orders materials or services from the lien claimant; and

(ii) The lien claimant is not a home improvement contractor as defined by § 17-25-502(2) or a residential building contractor as defined by § 17-25-502(3).

Ark. Code Ann. § 18-44-115(a) (emphasis added).

The notice referenced above, found at section 18-44-115(a)(7), reads as follows:

**IMPORTANT NOTICE TO OWNER**

I UNDERSTAND THAT EACH CONTRACTOR, SUBCONTRACTOR, LABORER, SUPPLIER, ARCHITECT, ENGINEER, SURVEYOR, APPRAISER, LANDSCAPER, ABSTRACTOR, OR TITLE INSURANCE AGENT SUPPLYING LABOR, SERVICES, MATERIAL, OR FIXTURES IS ENTITLED TO A LIEN AGAINST THE PROPERTY IF NOT PAID IN FULL FOR THE LABOR, SERVICES, MATERIALS, OR FIXTURES USED TO IMPROVE, CONSTRUCT, OR INSURE OR EXAMINE TITLE TO THE PROPERTY EVEN THOUGH THE FULL CONTRACT PRICE MAY HAVE BEEN PAID TO THE CONTRACTOR. I REALIZE THAT THIS LIEN CAN BE ENFORCED BY THE SALE OF THE PROPERTY IF NECESSARY. I AM ALSO AWARE THAT PAYMENT MAY BE WITHHELD TO THE CONTRACTOR IN THE AMOUNT OF THE COST OF ANY SERVICES, FIXTURES, MATERIALS, OR LABOR NOT PAID FOR. I KNOW THAT IT IS ADVISABLE TO, AND I MAY, REQUIRE THE CONTRACTOR TO FURNISH TO ME A TRUE AND CORRECT FULL LIST OF ALL SUPPLIERS AND SERVICE PROVIDERS UNDER THE CONTRACT, AND I MAY CHECK WITH THEM TO DETERMINE IF ALL MATERIALS, LABOR, FIXTURES, AND SERVICES FURNISHED FOR THE PROPERTY HAVE BEEN PAID FOR. I MAY ALSO REQUIRE THE CONTRACTOR TO PRESENT LIEN WAIVERS BY ALL SUPPLIERS AND SERVICE PROVIDERS, STATING THAT THEY HAVE BEEN PAID IN FULL FOR SUPPLIES AND SERVICES PROVIDED UNDER THE CONTRACT, BEFORE I PAY THE CONTRACTOR IN FULL. IF A SUPPLIER OR OTHER SERVICE PROVIDER HAS NOT BEEN PAID, I MAY PAY THE SUPPLIER OR OTHER SERVICE PROVIDER AND CONTRACTOR WITH A CHECK MADE PAYABLE TO THEM JOINTLY.

Ark. Code Ann. § 18-44-115(a)(7).

Arkansas Code Annotated section 17-25-502(2) (Supp. 2017) defines "residential building contractor" under the direct-sale exemption referred to above as

any person, firm, partnership, copartnership, association, corporation, or other organization or any combination, which for a fixed price, commission, fee, or wage, attempts to or submits a bid to construct or contract or undertakes to construct or assumes charge in a supervisory capacity or otherwise manages the construction of a single family residence or the property and structures appurtenant thereto[.]

Ark. Code Ann. § 17-25-502(2).

Act 984 of 2021 ("the 2021 version"), which went into effect July 28, 2021, amended section 18-44-115(a)(4), and it now provides the following:

If a residential contractor fails to give the notice required under this subsection, then the residential contractor *may not avail himself or herself of the benefit of the lien provided for in this subchapter*.

Ark. Code Ann. § 18-44-115(a)(4) (emphasis added).

The relevant difference between the 2017 version and the 2021 version of section 18-44-115(a)(4) is with the remedies, or lack thereof, available to the residential contractor who fails to provide the important lien notice to consumers. Under the 2017 version, the residential contractor has no remedy to enforce any provision of a contract, whereas the 2021 version provides that a residential contractor cannot obtain a lien on the property, but it ostensibly permits the pursuit of other remedies, such as breach of contract.

## II. *Background*

On December 18, 2020, Seaside contracted with the Curtises to install a swimming pool at their address in Siloam Springs for $67,919. When the Curtises failed to finish paying for their pool after its completion, Seaside filed a complaint on August 24, 2022, against the Curtises and others to impress and foreclose a lien against the Curtises' property. Seaside alleged that there was a balance of $56,676.70 for which it sought a lien. Seaside alleged that, because it had brought a direct action against the Curtises, it was "excused from providing any lien notices" otherwise required. Further, Seaside noted that it sought a personal judgment against the Curtises. On December 15, 2022, the trial court granted the Curtises' and another defendant's motions to dismiss without prejudice pursuant to Arkansas Rule of Civil Procedure 12(b)(6).

On January 5, 2023, Seaside filed an amended and restated complaint against only the Curtises for breach of contract and omitted the lien-foreclosure action. The Curtises moved for summary judgment. Following a hearing, the trial court granted the Curtises' motion, ruling that Seaside is a residential contractor required to give the lien notice; that Seaside failed to give such notice and does not qualify under the direct-sale exemption; that the 2017 version of section 18-44-115(a)(4) does not violate article 2, sections 13 and 17 of the Arkansas Constitution; and that the 2021 amendment to section 18-44-115(a)(4) should not be applied retroactively. Seaside appealed.

In an opinion dated March 12, 2025, we dismissed the appeal for lack of jurisdiction because the trial court had neither dismissed with prejudice all of the claims against all of the defendants nor included a certification of finality pursuant to Ark. R. Civ. P. 54(b). *Seaside Pools, Inc. v. Curtis*, 2025 Ark. App. 155. Now that the trial court has entered a final, appealable order, Seaside has again appealed.

### III. *Standard of Review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *City of Gravette v. Centerton Waterworks & Sewer Comm'n*, 2019 Ark. App. 540, 589 S.W.3d 456. A trial court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Id.*

5

The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Hammerhead Contracting & Dev., LLC v. Ladd*, 2016 Ark. 162, 489 S.W.3d 654. The purpose of the rules of statutory construction is to give effect to the intent of the legislature. *Id.* The first rule of statutory construction is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning. *Id.* Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Id.* Statutes relating to the same subject must be construed together and in harmony, if possible. *Id.*

III. *Discussion*

A. "Residential Contractor"

The laws that are in force at the time when, and the place where, a contract is made and to be performed, enter into and form part of it, and parties are conclusively presumed to contract with reference to the existing law. *Ellison v. Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988). Seaside admits that it did not provide the notice required by the 2017 version of section 18-44-115(a)(4), which was in effect at the time the parties entered into this contract. Seaside contends, however, that it is not a residential contractor required to give the lien notice. Seaside argues that the trial court therefore erred in granting summary judgment to the Curtises. Seaside relies on the following language in *Sluyter v. Wood Guys, LLC*, 2021 Ark. App. 442, at 6–7, 638 S.W.3d 849, 854–55:

6

The . . . materialmen's-lien statutes define "contractor" to mean any person who contracts . . . directly with a person holding an interest in real estate . . . for the construction of any improvement to or repair of real estate. . . . While the term residence or residential is not specifically defined in the statute, the common usage of the word "residence" refers to a place or dwelling in which a person . . . live[s].

Seaside argues that, while it is a contractor, it did not contract to construct a residence; rather, it contracted to install a swimming pool. Seaside points out that people *live* in residences and *swim* in pools. Seaside asserts that only if it had built the swimming pool inside the Curtises' residence could it be considered a residential contractor. Seaside argues that because it is not a residential contractor, it was not subject to the harsh penalties of the 2017 version of the statute and should be permitted to proceed with its breach-of-contract action against the Curtises.

The lien notice itself provides that even architects, engineers, surveyors, appraisers, landscapers, abstractors, and title-insurance agents are entitled to a lien, even though some of those people do not—strictly speaking—work on the residence itself. We decline to accept Seaside's strained definition of "residential contractor," which urges us to focus on the residence or proximity to the residence. We conclude that Seaside is clearly a "residential"— as opposed to a "commercial"—contractor. The Curtises point out that a "public swimming pool" is defined as a *structure* of man-made materials, located either indoors or outdoors, used for bathing or swimming. Ark. Code Ann. § 20-30-101(5)(A) (Supp. 2019). We agree that it makes little sense that a public swimming pool is a structure but that a private swimming pool is not. The Curtises also cite *Alwes v. Richheimer*, 185 Ark. 535, 538, 47 S.W.2d 1084, 1085 (1932), for the proposition that "appurtenances" are things that become

7

"so affixed to the realty that [they] cannot be removed without physical injury thereto." An appurtenance is also said to be a thing belonging to and going with the transfer of a principal thing. *See Bennett v. Weis*, 205 Ark. 198, 201 n.8, 168 S.W.3d 379, 382 n.8 (1943). The swimming pool here is affixed to the Curtises' realty, likely adds value to their property as a whole, and would convey with the sale of their residence. Moreover, removing the swimming pool from the Curtises' property would damage the ground and leave a giant hole. The only reasonable conclusion is that the swimming pool in the Curtises' backyard is a structure that is appurtenant to the family's property.

Seaside is a corporation that, for a fixed price, contracted to construct a swimming pool, which we have determined is a structure appurtenant to the Curtises' property. We hold that Seaside is indeed a residential contractor and was required to give the notice required by the 2017 version of section 18-44-115(a)(4); therefore, the trial court did not err in determining that the Curtises were entitled to summary judgment as a matter of law.

### B. Retroactive Application of the 2021 Version

Seaside alternatively argues that the trial court erred in finding that the 2021 version of section 18-44-115(a)(4) should not be applied retroactively to relieve it of the severe consequences of the 2017 version of the statute. The Curtises assert, however, that the law in effect at the time the contract is entered into applies and that "subsequent changes to the act don't matter."

In *Dye v. Precision Foundation Specialties & Flow Rite Drainage Solutions, Inc.*, 2022 Ark. App. 220, 646 S.W.3d 168, we said that

[r]etroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only support a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.

*Id.* at 12, 646 S.W.3d at 177 (citing *McMickle v. Griffin*, 369 Ark. 318, 338–39, 254 S.W.3d 729, 746 (2007)). The general rules also apply to amendatory Acts. *Id.* Further, our supreme court has held that,

[a]lthough the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or remedy. Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedures, are not within the general rule against retroactive operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retroactive application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute. . . . A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective.

*Archer v. Sisters of Mercy Health Sys., St. Louis, Inc.*, 375 Ark. 523, 528, 294 S.W.3d 414, 417 (2009).

The 2021 version does not expressly state that it applies retroactively, so we must begin with the presumption that it applies only prospectively. But is the 2021 amendment "remedial" legislation? A statute is remedial if it supplies "a new or more appropriate remedy to enforce an existing right or obligation." *Cauffiel v. Progressive Eldercare Servs.-Saline, Inc.*, 2021 Ark. App. 314, at 10, 635 S.W.3d 1, 10 (quoting *Bean v. Off. of Child Support Enf't*, 340

9

Ark. 286, 297, 9 S.W.3d 520, 526 (2000)). We hold that the 2021 version is remedial because it provides a more appropriate remedy—precluding only a lien as opposed to providing no remedy at all—to enforce Seaside's existing obligation to provide the lien notice in its contracts. With that said, the Curtises argue that they had a vested right to be notified in writing that a lien could be placed on their entire property if they paid Seaside, but then Seaside failed to pay its suppliers and laborers. They assert that retroactively applying the 2021 version of the statute would deprive them of that right. We disagree.

The 2021 amendment does not disturb the Curtises' vested right to the lien notice. The 2021 version still provides that consumers must be given notice of a potential lien, but the amendment focuses on the remedy available to a residential contractor who fails to provide consumers with the important notice. Moreover, there is no vested right to a particular remedy, *Archer*, *supra*, so the Curtises do not have a vested right to leaving Seaside with no way to enforce its contract—a contract that the Curtises agreed to for installation of a swimming pool in their backyard. The 2021 version of the statute permits Seaside to pursue a civil breach-of-contract action, which is a substituted remedy for having no remedy whatsoever with the 2017 version. Because we hold that the 2021 version of Ark. Code Ann. § 18-44-115(a)(4) applies retroactively, we need not reach Seaside's alternative argument that the 2017 version of the statute is unconstitutional.

Reversed and remanded.

GLADWIN and THYER, JJ., agree.

*Crouch, Harwell, Fryar & Ferner, PLLC*, by: *James E. Crouch* and *Matthew L. Fryar*, for appellant.

*Lisle Rutledge P.A.*, by: *Donnie Rutledge*, for appellees.